IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

N<small>AOMI</small> B<small>OONE</small>,
as personal representative of the
Estate of (M.P.D.B.), deceased, and
N<small>AOMI</small> B<small>OONE</small>, individually,

           Plaintiffs,

v.                                               Case No. 14-2548-JTM

TFI F<small>AMILY</small> S<small>ERVICES</small>, I<small>NC</small>., et al.,

           Defendants.

**MEMORANDUM AND ORDER**

This case arises out of the abuse-related death of M.B., plaintiff Naomi Boone's minor child. M.B. died from injuries sustained at the hand of his natural father, Lee Davis, after defendant TFI Family Services, Inc. ("TFI") placed him in Davis's home. Plaintiff brought this ten-count civil complaint against defendants TFI, the State of Kansas, the Kansas Department for Children and Families ("DCF"), and several Kansas employees in their individual capacities. Before the court is defendant TFI's Motion to Dismiss Counts III and IX (Dkt. 62) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). As discussed below, TFI's motion is granted.

**I. Background**

Consistent with the court's obligation to accept as true the facts alleged by plaintiff, the following background is taken from the complaint. (Dkt. 1).

Before July 8, 2012, M.B. – who was born in 2008 – lived with plaintiff separate from Davis. On or about July 8, 2012, DCF removed M.B. from plaintiff's custody after he was found

wandering alone in a local grocery store. DCF filed a petition in the District Court of Brown County, Kansas, seeking a determination that M.B. was a "child in need of care." DCF prevailed and made a referral to TFI for M.B.'s placement.

DCF conducted risk assessments regarding M.B.'s natural parents in early July 2012. Plaintiff reported that Davis has a history of violence and substance abuse. Pursuant to the risk assessments, DCF referred M.B. to TFI for out-of-home placement. On or about July 10, 2012, TFI placed M.B. in the licensed foster home of M.B.'s paternal grandmother.

On or about November 3, 2012, TFI removed M.B. from the foster home and placed M.B. in Davis's home. In late November 2012, a TFI employee testified in the District Court of Brown County, Kansas, that TFI had no concerns about placing M.B. with Davis. TFI's court report stated that DCF was monitoring M.B.'s case. DCF was not represented at the hearing.

On or about November 26, 2012, DCF received a report from M.B.'s elementary school that he had bruising on his abdomen about the size of an open hand and that he said his dad hits him. In response, DCF began to investigate M.B.'s placement with Davis.

In early December 2012, Davis enrolled M.B. in a different elementary school. Davis began evading phone calls. On February 8, 2013, M.B.'s therapist reported to TFI that Davis had not been bringing M.B. to therapy. On February 19, 2013, TFI again testified in the District Court of Brown County that it had no concerns about placing M.B. in Davis's home. DCF did not attend the hearing.

On March 3, 2013, Davis brought M.B. to the hospital in Hiawatha, Kansas, stating that M.B. had fallen down 30 stairs. M.B. presented as unresponsive. Healthcare providers observed extensive bruising and abrasions on M.B.'s body. He had suffered multiple injuries, including internal bleeding and a brain bleed. M.B. was flown to Children's Mercy Hospital in Kansas

City, Missouri, where he died from his injuries on March 5, 2013. Cause of death was determined to be injuries sustained by non-accidental blunt-force trauma.

On May 21, 2013, Davis was convicted in State court of murder in the second degree for M.B.'s death.

**TFI's Relationship with the State of Kansas**

Plaintiff alleges the following relationship between TFI and the State of Kansas. TFI is a private Kansas corporation licensed by the State as a child placement agency. (Dkt. 1, at 17). TFI was, at all relevant times, operating under contract with DCF, an agency of the State of Kansas. (Dkt. 1, at 6-8). DCF had no right to control the manner in which TFI performed its work and "only directed the outcome or result to be achieved." *Id.* at 8-9. TFI was responsible for adhering to policies, administrative regulations, and statutes of the State of Kansas. *Id.* at 9. TFI is responsible for its internal operations in achieving the goals of its contract. *Id.* at 9-11. DCF monitored M.B.'s case and performed risk assessment investigations relating to M.B. and Davis. *Id.* at 22-26. DCF communicated with TFI regarding the risk assessments. *Id.* at 26-27. TFI did not notify DCF of its intent to remove M.B. from foster care and place him with Davis. *Id.* at 22.

## II. Legal Standard

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must be sufficient to "raise a right to relief above the speculative level." *Id.*

"While the 12(b)(6) standard does not require that [a] [p]laintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether [the] [p]laintiff has set forth a plausible claim." *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (clarifying and affirming *Twombly* 's probability standard).

### III. Analysis

Defendant moves to dismiss plaintiff's Count III § 1983 claim for wrongful death and Count IX state-law claim for outrageous conduct. The court addresses each in turn.

**A. Plaintiff's § 1983 wrongful death claim is dismissed because TFI was not a state actor.**

"To state a claim under 42 U.S.C. § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quotation and brackets omitted). A private actor may be treated as a state actor[1] for purposes of § 1983 actions when the defendant's conduct is "fairly attributable to the State." *Johnson v. Rodriguez*, 293 F.3d 1196, 1203 (10th Cir. 2002) (citation omitted). In the Tenth Circuit, a private entity may be treated as a "state actor" when circumstances satisfy one of the following four tests: (1) the nexus test, (2) the public function test, (3) the joint action test, or (4) the symbiotic relationship test. *Id.*; *Wittner v. Banner Health*,

---

[1] Whether one is a state actor or is acting under color of state law is the same inquiry for a § 1983 claim. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 932 (1982) ("[S]tate action and action under color of state law are the same.")

720 F.3d 770, 775 (10th Cir. 2013). Plaintiff does not argue that the public function test[2] applies to TFI.

The nexus test is satisfied "if the state exercises sufficient coercive power over the challenged action" that the challenged conduct is fairly attributable to the state itself. *Wittner*, 720 F.3d at 775; *accord Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995). The mere existence of government regulations, contractual relationships, or governmental approval of the conduct are insufficient to satisfy the nexus test. *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982); *Gallagher*, 49 F.3d at 1448. Rather, the state must exercise "coercive power" or "provide[] such significant encouragement . . . that the choice must in law be deemed to be that of the state." *Id.* at 1448 (quotation omitted).

The joint action inquiry is "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher*, 49 F.3d at 1453. The state's acquiescence to the private action is also insufficient to show joint action. *Id.* at 1455.

The symbiotic relationship test asks whether the state has so entwined itself with the private actor that the relationship is more than the "mere private [purchase] of contract services." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 299 (2001). The symbiotic relationship test is satisfied where the "private and public actors have sufficiently commingled their responsibilities." *Wittner*, F.3d at 778; *accord Brentwood Acad.*, 531 U.S. at 924.

Under any of the four tests, the deprivation must be caused by the exercise of a right, privilege, or rule created or imposed by the State or a person for whom the state is responsible. *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996). The private entity must also "have acted

---

[2] "The public function test asks whether the challenged action is a traditional and exclusive function of the state." *Wittner v. Banner Health*, 720 F.3d 770, 776-77 (10th Cir. 2013) (quotation and citation omitted). Plaintiff does not allege that TFI's placement service is traditionally and exclusively a function of the state.

together with or . . . obtained significant aid from the state officials or engaged in conduct otherwise chargeable to the State." *Id.* (quotation and citation omitted).

Here, certain statutes and regulations affect TFI's conduct as a child placement service, but plaintiff does not allege that they coerced or encouraged TFI's decision to place M.B. with Davis. TFI operates under a contract with the State, but plaintiff does not allege that the contract terms coerced or encouraged TFI's placement decision. DCF monitors TFI's cases to some extent, but did not know of TFI's decision to place M.B. with Davis, let alone coerce or encourage that decision. Plaintiff patently alleges that TFI retains control of its means of placement and that DCF's influence on TFI's decisions is limited to the general outcomes of placement decisions, not the decision itself. At most, DCF is alleged to have acquiesced to TFI's decisions by not intervening in TFI's placement decision.

The facts alleged show that TFI acted independent of DCF's influence – and perhaps even against DCF's established policies – when it placed M.B. in Davis's care. The facts alleged thus do not indicate coercion or significant encouragement by DCF. Likewise, the facts do not indicate that TFI's decision-making process was in concert, entwined, or commingled with DCF's decision-making. The facts alleged indicate that TFI received no aid from DCF in determining that M.B. should be placed with Davis. As noted above, plaintiff alleges that DCF acquiesced to TFI's decisions by not intervening when it later learned that M.B. had been placed with Davis.

TFI's conduct under the facts alleged is not fairly attributable to the state. Accordingly, plaintiff fails to allege that TFI was a state actor and thus fails to state a plausible § 1983 claim. Count III is dismissed without prejudice.

**B. Plaintiff's Count IX claim for Outrageous Conduct is dismissed.**

Plaintiff asserts a third-party outrageous conduct claim against TFI, alleging that TFI recklessly subjected plaintiff to severe distress as a result of its actions directed at M.B. Kansas follows the Restatement (Second) of Torts § 46 in adjudicating claims of intentional infliction of emotional distress by outrageous conduct. *McIlrath v. City of Kingman, Kan.*, 324 P.3d 343, 2014 WL 1887652, at *6 (Kan. Ct. App. May 9, 2014); *accord Valadez v. Emmis Commc'ns*, 229 P.3d 389, 394 (Kan. 2010) (under Kansas law, intentional infliction of emotional distress is the same tort as "outrage"). The plaintiff must prove distress "so severe that no reasonable person should be expected to endure it." *Id.* (citing *Taiwo v. Vu*, 822 P.2d 1024, 1030 (Kan. 1991)). A plaintiff alleging a third-person outrageous conduct claim must prove:

> (1) that the conduct was 'extreme and outrageous';
> (2) that such conduct was directed at a third person;
> (3) that the claimant is a member of the immediate family of that third person;
> (4) that the claimant was personally present when the extreme and outrageous conduct took place;
> (5) that the claimant sustained severe emotional distress as a direct result of that conduct (whether or not the claimant sustained bodily harm); and
> (6) that the person whose conduct is complained of "intentionally" or "recklessly" caused severe emotional distress to the claimant.

*Wiehe v. Kukal*, 592 P.2d 860, 863 (Kan. 1979) (citing RESTATEMENT (SECOND) OF TORTS § 46(2) (1965)).

Plaintiff does not identify TFI's allegedly outrageous conduct. *See* (Dkt. 1, at 62). However, it can be reasonably inferred that the conduct in question is the removal of M.B. from foster care and placement with Davis. Plaintiff does not allege that she was personally present when TFI decided to place M.B. with Davis or when M.B. was actually placed with Davis. She thus fails to plead an element of the claim. Although her failure to plead an element is not itself fatal to the plausibility of her claim, the balance of facts pled do not allow the court to reasonably

infer that she was personally present when TFI committed the allegedly outrageous conduct. Rather, the facts pled give rise to a reasonable inference that plaintiff was not personally present either when TFI made a decision to place M.B. with Davis or when M.B. was actually placed with Davis. Count IX thus lacks plausibility.

Plaintiff argues that she need not be personally present to assert a prima facie claim for outrageous conduct under the RESTATEMENT (THIRD) OF TORTS § 46. While that is an accurate evaluation of the third Restatement, Kansas courts have yet to adopt it. Kansas courts apply the standard set forth in *Wiehe*, which follows the RESTATEMENT (SECOND) OF TORTS § 46. This court is wary of removing an element from a claim established by the Kansas Supreme Court until that court does so itself. Further, no Kansas cases compel the court to think that the Kansas Supreme Court would adopt the third Restatement for third-party outrageous conduct claims.

Accordingly, plaintiff's Count IX claim against TFI for outrageous conduct is dismissed without prejudice for failure to state a claim upon which relief may be granted.

IT IS ACCORDINGLY ORDERED this 3rd day of September, 2015, that TFI's motion to Dismiss Counts III and IX (Dkt. 62) is GRANTED .

s/J. Thomas Marten  
J. THOMAS MARTEN, JUDGE