IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NAOMI BOONE, individually and as
personal representative of the Estate of
M.P.D.B., deceased,

        Plaintiff,

v.                                       Case No. 2:14-cv-02548-JTM

TFI FAMILY SERVICES, INC., et al.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiff Naomi Boone's objection to a Report and Recommendation by Magistrate Judge Kenneth G. Gale (Dkts. 233, 242). Judge Gale recommended that plaintiff's motion to amend the complaint be denied because plaintiff's filing of the motion was unduly delayed. Plaintiff argues the delay was not unreasonable under the circumstances, that no prejudice resulted from it, and that the motion to amend should be granted in the interests of justice.

**I. Legal Standards.**

<u>De novo review</u>. Because the issue before the court is considered a dispositive one, the court "must determine de novo any part of the magistrate judge's disposition that has been property objected to." Fed. R. Civ. P. 72(b)(3). The district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

Amendments to the pleadings. After a responsive pleading has been filed, a party may amend its pleading only with consent of the other party or with the court's leave. Fed. R. Civ. P. 15(a)(2). Leave should be freely given "when justice so requires." *Id*. Under Rule 15(a), a motion to amend a complaint should be granted "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). When a motion to amend is filed after a scheduling order deadline – as was done here - Rule 16(b) governs the amendment. *See Bennett v. Consolidated Gravity Drainage Dist. No. 1*, ___Fed.Appx.___, 2016 WL 2865351, *2 (5th Cir. May 16, 2016). Rule 16(b) permits modification of a scheduling order "only with good cause." Thus, after a scheduling order deadline, a party seeking leave to amend must demonstrate: 1) good cause for seeking modification under Rule 16(b)(4); and 2) satisfaction of the Rule 15(a) standard. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l. Bank Assoc.*, 771 F.3d 1230, 1240 (10th Cir. 2014).

As indicated above, one of the justifications for denying a motion to amend under Rule 15(a) is undue delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). In determining whether a delay was undue, the Tenth Circuit focuses primarily on the reasons for the delay. *Id*. "Lateness does not of itself justify the denial of [an] amendment," but the "longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the

2

court, is itself a sufficient reason for the court to withhold permission to amend.'" *Id.* (*quoting Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

**II. Background.**

Plaintiff filed this action on October 27, 2014. It arose out the death of plaintiff's four-year-old son M.B., who died on March 5, 2013, from abuse at the hands of his father. In essence, plaintiff alleges that defendants placed M.B. in his father's custody while ignoring or failing to properly take account of abuse risk factors and indications of ongoing abuse. Dkt. 1.  The named defendants include: TFI Family Services, Inc., a Kansas corporation that contracts with the Kansas Department for Children and Families (DCF) to provide placement and case management services for children in DCF custody; the State of Kansas and the DCF; and three social workers who were employed by DCF.  The 63-page complaint asserts federal claims under 42 U.S.C. § 1983 for injuries and wrongful death, as well as state law claims for the torts of outrage, gross negligence, wrongful death, and wanton conduct.

In February 2015, Judge Gale entered a scheduling order containing the following deadlines:  motions to dismiss - May 15, 2015; motions to amend - July 15, 2015; discovery - December 28, 2015; final pretrial conference - January 19, 2016; and jury trial - July 26, 2016. Dkt. 24. The estimated time of trial was four weeks.

On May 14, 2015, TFI moved to dismiss two of the counts, arguing (among other things) that plaintiff failed to state a valid claim for relief under § 1983 because the allegations did not show that TFI was acting under color of state law. Dkt. 62. On September 3, 2015, the court granted the motion, without prejudice, finding plaintiff

3

had not alleged facts showing that TFI's conduct was fairly attributable to the State of Kansas. Dkt. 136.[1]

On November 5, 2015, plaintiff filed an unopposed motion to modify the scheduling order. Dkt. 153. The motion sought to extend the discovery deadline to June 1, 2016, noting that defendants "have not produced its electronically stored information" as of November 5, 2015, and that they anticipate doing so "within the next few weeks." Dkt. 153 at 2. Judge Gale granted the motion and revised various deadlines accordingly, including: discovery – June 1, 2016; final pretrial conference – July 8, 2016; dispositive motions – July 29, 2016; in limine conference – December 28, 2016; and jury trial January 4, 2017.

On January 14, 2016, plaintiff filed a motion to amend the complaint. Dkt. 168. The proposed amendment would add allegations that TFI performed various tasks with respect to M.B. that "were traditionally the exclusive prerogative of the State of Kansas." It would also add allegations that TFI maintained a custom and practice between 2009 and 2013 of failing to prevent harm to foster children, and that between 2005 and 2015 TFI was cited numerous times by the Kansas Department of Health and Environment for regulatory non-compliance. Plaintiff's memorandum acknowledged the late filing, but argued that the amendment did not assert a new legal theory, that TFI was not prejudiced because the added facts were previously known to the parties,

---

[1] Among other things, the court cited the "public function test" for state action and observed that "[p]laintiff does not allege that TFI's placement service is traditionally and exclusively a function of the state," which is a necessary element of the public function test. Dkt. 136 at 5, n.2. In so doing the court mistakenly asserted that "[p]laintiff does not argue that the public function test applies to TFI." *Id*. at 5. In fact, plaintiff argued that the allegations in the complaint supported a finding of state action under the public function test and under other standards. Dkt. 67 at 14-15.

4

and that the request was made well in advance of trial and would not affect the discovery process. Dkt. 169 at 3.

On April 15, 2016, Judge Gale conducted a telephone conference at the request of the parties to discuss an extension of the discovery deadline and its impact on the trial setting. *See* Dkt. 235 at 1. On April 27, 2016, he entered a revised scheduling order which changed the discovery deadline to September 2, 2016. *Id*. at 2.  The order also set deadlines for a final pretrial conference (September 16, 2016); summary judgment motions (October 14, 2016); motions to exclude experts (January 31, 2017); and motions in limine (March 22, 2017). An in limine hearing was set for March 22, 2017, and the trial was rescheduled for March 28, 2017.

### III. Discussion.

Plaintiff asserts that filing of the motion to amend was late because of the complexity of the case, with numerous depositions being taken and a multitude of facts subject to discovery, including voluminous amounts of ESI discovery. Dkt. 242 at 4. Plaintiff argues the delay was not unreasonable in a case that was (at the time) pending for about 15 months and for which the scheduled trial date was still a year away.

After reviewing the record, the court concludes that plaintiff has shown good cause for modification of the scheduling order and that her filing is not the product of undue delay.  As Judge Gale noted, plaintiff offered a plausible explanation for missing the original deadline for amendments. Because the court's ruling on TFI's motion to dismiss did not come until after the deadline, plaintiff arguably did not have a complete opportunity to remedy pleading defects in her pleading before the deadline. There is no

5

hint of bad faith on plaintiff's part in missing the deadline, and the record indicates that the extensive and complex nature of discovery contributed to plaintiff's delay in seeking to amend. In fact, the discovery deadline was recently extended once again, to September 16, 2016, meaning there are still several months of discovery remaining. Under the circumstances, the court concludes that plaintiff has shown good cause for modification of the scheduling order.

With respect to the matter of undue delay, there is no question that plaintiff was late coming forward with her request. As case law has long recognized, however, "[l]ateness does not of itself justify the denial of the amendment." *Minter*, 451 F.3d at 1205 (*quoting R.E.B., Inc. v. Ralson Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)). The bottom-line concern is with "protracted delay, with its attendant burdens on the opponent and the court…." *Minter*, 451 F.3d at 1205. But because of necessary adjustments to the scheduling order in this case, which have now moved the schedule well beyond the original deadlines, there are no "attendant burdens" on the defendants or on the court that would justify denial of the request to amend. The fact that defendants will have to respond to the allegations of the amended complaint is not the sort of prejudice that would warrant a denial under such circumstances. Plaintiff credibly contends that the allegations have been known to TFI all along - an assertion which TFI does not deny - and that the amendment will have little or no impact on discovery. And given the recent scheduling deadlines established by Judge Gale, the court is confident that the current schedule can be maintained even with the requested amendment. In sum, plaintiff had a good-faith reason for the delay, the extensive and

6

complex nature of discovery contributed to the delay, and no significant prejudice to the defendants or to the court would result from allowing the amendment. Under such circumstances, the court concludes that the motion for leave should not be denied on the ground of undue delay.

<u>Futility of amendment</u>. TFI makes a final argument to deny the motion on the ground of futility. A district court may refuse to allow an amendment if the complaint, as amended, would be subject to dismissal. *See Barnes v. Harris*, 783 F.3d 1185, 1197 (10th Cir. 2015) (*citing Full Life Hospice, LLC v. Sebelius,* 709 F.3d 1012, 1018 (10th Cir.2013)). TFI argues that plaintiff's proposed amended complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 because "foster care [is] not traditionally the *exclusive* prerogative of the state." Dkt. 249 at 4. As such, it argues, plaintiff cannot meet the "public function test" for showing that TFI, a private entity, acted under color of state law.

Some of the cases cited by TFI hold only that *providing care* to foster children has not traditionally been an exclusive state function. *See e.g., Milburn v. Anne Arundel Cty. Dep't. of Soc. Svcs.*, 871 F.2d 474, 479 (4th Cir.), *cert. denied*, 493 U.S. 850 (1989) ("The care of foster children is not traditionally the exclusive prerogative of the State."). Plaintiff's proposed amended complaint alleges, among other things, that determining the placement of children who were removed from their traditional family was an exclusive government function that was performed by TFI under contract with DCF. Dkt. 168-1 at 9. On the question of whether performance of placement services can constitute state action there is conflicting case law, with no controlling authority in the Tenth Circuit.

7

*See e.g., Smith v. Beasley*, 775 F.Supp.2d 1344, 1354 (M.D. Fla. 2011) (citing cases and commenting that "[t]he Court views placement services, traditionally exclusively performed by the State, as distinguishable from foster parenting services, not traditionally exclusively performed by the State."); *Harris ex rel. Litz v. Lehigh Cty. Office of Children & Youth Svcs.*, 418 F.Supp.2d 643, 651 (E.D. Pa. 2005) (removing children from their home is traditionally an exclusive prerogative of the state). *But see Phelan ex rel. Phelan v. Torres*, 2011 WL 6935354, *10, n. 6 (E.D.N.Y. 2011) (concluding that foster-placement services in New York have traditionally been performed by private entities and that "[t]he First, Third, and Fourth Circuits have similarly observed that 'child care and placement is not traditionally the exclusive prerogative of the state.'").

The public function test is "difficult to satisfy," because "[w]hile many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Wittner v. Banner Health*, 720 F.3d 770, 777 (10th Cir. 2013). In J*ohnson v. Rodrigues*, 293 F.3d 1196 (10th Cir. 2002), the Tenth Circuit found that an adoption agency was not performing an exclusive state function when it facilitated the adoption of the defendant's child. In finding that summary judgment was properly granted to the adoption agency, the circuit noted that plaintiff "has not presented any evidence indicating that the adoption center or adoptive parents are the 'exclusive means to adopt children in Utah.'" *Johnson*, 293 F.3d at 1203. Similarly, in *Wittner,* the circuit concluded that health care providers did not engage in state action by involuntarily committing a mentally ill person to a hospital. The court relied upon the Seventh Circuit's review in *Spencer v. Lee*, 864 F.2d 1376 (7th Cir. 1989) (en banc), which

8

found that the involuntary commitment of mentally ill persons "had never been an exclusive public function in Anglo-American law or under the law of Illinois," but instead had traditionally been provided in "private custody" by friends and relations. *Wittner*, 720 F.3d at 777 (*citing Spencer*, 864 F.2d at 1380-81)). The Tenth Circuit concluded that the plaintiff in *Wittner* "offer[ed] no facts regarding the history of mental-health commitment in Colorado to compel a different conclusion here." *Wittner*, 720 F.3d at 777.

At this point, plaintiff's proposed amended complaint fairly alleges that determining the placement of a child whose natural family has failed to provide care is traditionally an exclusive prerogative of the State of Kansas within the meaning of the public function test. The allegation is not inherently implausible, and plaintiff could conceivably make a factual and legal showing sufficient to support it, even though it may be a difficult allegation to prove. TFI can of course challenge the allegation on summary judgment, but, based solely on the pleadings, TFI has not shown that the allegation fails to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** this day of June, 2016, that plaintiff's motion to amend the complaint (Dkt. 168 ) is GRANTED. Plaintiff is granted ten days' leave to file the amended complaint. The court declines to adopt the Report and Recommendation (Dkt. 233); plaintiff's objection (Dkt. 242) to the report is sustained.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE
